IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION

JOSEPH CHUNESTUDY                                          PETITIONER

VS.                     CASE NO. 5:14CV00426 JLH/PSH

WENDY KELLEY, Director,
Arkansas Department of Correction (ADC)                     RESPONDENT

**PROPOSED FINDINGS AND RECOMMENDATIONS**

**INSTRUCTIONS**

The following recommended disposition has been sent to United States District Court Judge J. Leon Holmes. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection; and (2) be received by the Clerk of this Court Clerk within fourteen (14) days of this Recommendation. By not objecting, you may waive the right to appeal questions of fact.

**DISPOSITION**

On August 12, 2011, Joseph Chunestudy was convicted in Greene County Circuit Court of rape. He was sentenced to life imprisonment. In his direct appeal Mr. Chunestudy alleged the trial court erred by: (1) allowing the introduction of prior and subsequent sexual activity[1] with the victim into evidence; (2) allowing the prosecution to comment on Mr. Chunestudy's right to remain silent; (3) allowing a supervisor with the Arkansas State Police to testify as an expert and lay witness during the guilt phase of the trial; and (4) denying Mr. Chunestudy's motion for a directed verdict.

---

[1] Mr. Chunestudy was charged with having sexual relations with his daughter in Greene County during the time period from March 2003 through June 2005. At trial, evidence was adduced that he had sex with his daughter both before and after this time period, when Mr. Chunestudy and his daughter lived in Oklahoma and elsewhere in Arkansas.

1

The Arkansas Supreme Court affirmed the conviction. *Chunestudy v. State*, 2012 Ark. 222. Mr. Chunestudy filed a timely Rule 37 petition with the trial court. Following a hearing, the trial court dismissed the petition. Mr. Chunestudy appealed, alleging his trial attorney was ineffective in the following ways: (1) for failing to renew the directed verdict motion at the close of evidence; (2) for failing to properly prepare for trial in that he did not call a witness to rebut the testimony of Lea Ann Vanaman; (3) for failing to impeach the victim concerning inconsistent statements; and (4) for failing to investigate and failing to subpoena additional witnesses. He also alleged the trial court erred in failing to grant his motion for appointment of counsel and failing to provide him with a copy of the record for use in the Rule 37 hearing. The Supreme Court of Arkansas affirmed the trial court. *Chunestudy v. State*, 2014 Ark. 345.

In his current habeas corpus petition Mr. Chunestudy claims:

(1) the trial court erred in admitting evidence of prior and subsequent acts;

(2) the trial court erred in allowing witness Lea Ann Vanaman to testify after late disclosure of her name;

(3) the trial court erred in allowing witness Lea Ann Vanaman to testify as an expert;

(4) the trial court erred in allowing comments on Mr. Chunestudy's right to remain silent; and

(5) he was denied his right to effective assistance of counsel when his attorney:

    (a) failed to investigate the victim's past;

    (b) failed to discover fabrications in the victim's testimony and failed to discover other evidence to challenge the victim's testimony;

    (c) failed to hire a medical expert to question the victim's testimony regarding a prior miscarriage;

    (d) made numerous errors which permitted hearsay and other inadmissible evidence to be introduced;

    (e) failed to contact potential witnesses Richard and Diane George, who were the

victim's godparents;

(f) failed to contact Todd Nelson of the Jonesboro Police Department to testify about the theft of Mr. Chunestudy's vehicle;

(g) failed to object to comments on his right to remain silent;

(h) failed to renew the motion for directed verdict at the close of all the evidence; and

(i) failed to ask for a limiting instruction on the evidence of prior acts.

The respondent urges that claims 1-3 do not raise federal claims for relief, instead relying only upon alleged violations of state law. The respondent argues that claim 4 and claims 5(a), 5(d), 5(e), 5(g), and 5(i) should be dismissed as procedurally barred. By previous Court Order, Mr. Chunestudy was notified of his opportunity to respond to the respondent's assertions, and Mr. Chunestudy filed a reply. See Docket entries nos. 10 & 11. We will first address the issues of raising only a state law claim and procedural default, then proceed to remaining issues in this case.

**State Law Claims:** In his responsive pleading, Mr. Chunestudy agrees with the respondent that claims 2 and 3 raise only allegations of state law violations, and he explicitly abandons these grounds for relief. Docket entry no. 11, page 6. There is no dispute that a petitioner must raise and prove a violation of "the Constitution or laws or treaties of the United States" in order to obtain habeas corpus relief. 28 U.S.C. § 2254(a). Claims 2 and 3 are dismissed as abandoned by the petitioner. Claim 1 will be addressed later in this filing.

**Procedural Default:** The respondent contends that claims 4, 5(a), 5(d), 5(e), 5(g), and 5(i) are not properly before this Court due to the petitioner's failure to adequately raise the claims in state court, as required by *Wainwright v. Sykes*, 433 U.S. 72 (1977), and its progeny. Specifically, the respondent contends that Mr. Chunestudy attempted to raise ground 4 on direct appeal but the Arkansas Supreme Court did not consider the merits of the claim because no contemporaneous objection was made at trial to preserve the issue on appeal. Further, the respondent contends claims 5(a), 5(d), 5(g), and 5(i) were not raised by Mr. Chunestudy in his Rule 37 appeal, and claim 5(e) was raised in the Rule 37 appeal but not raised in the trial court Rule 37 proceeding.

In *Wainwright v. Sykes, supra*, the United States Supreme Court held that a federal court should not reach the merits of a litigant's habeas corpus allegation if he has procedurally defaulted in raising that claim in state court: that is, if he was aware of the ground, but failed to pursue it to a final determination. The exception created by the Supreme Court permits such an allegation to be addressed if the litigant can establish "cause" for his failure to assert the known ground and "prejudice" resulting from that failure. *See, also, Clark v. Wood*, 823 F.2d 1241, 1250-51 (8th Cir. 1987); *Messimer v. Lockhart*, 822 F.2d 43, 45 (8th Cir. 1987). The *Wainwright v. Sykes* cause and prejudice test was clarified by two subsequent Supreme Court decisions, *Smith v. Murray*, 477 U.S. 527 (1986), and *Murray v. Carrier*, 477 U.S. 478 (1986).

With respect to cause, these cases explain that the Court has "declined in the past to essay a comprehensive catalog of the circumstances that [will] justify a finding of cause." *Smith v. Murray*, 477 U.S. 533-34. However, one can discern from these cases several circumstances in which cause might be found: first, where some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rules, *see Murray v. Carrier*, 477 U.S. at 488; second, where a constitutional claim is so novel that its legal basis is not reasonably available to counsel, *see Reed v. Ross*, 468 U.S. 1 (1984); or third, if the litigant failed to receive the effective assistance of counsel. *See Murray v. Carrier*, 477 U.S. at 488. In addition, there is one extraordinary circumstance where a federal habeas court may grant relief without a showing of cause: where a constitutional violation has probably resulted in the conviction of one who is actually innocent. *Id.* at 496.

In his explanatory pleading, Mr. Chunestudy cites *Martinez v. Ryan*, 132 S.Ct. 1309 (2012), and *Trevino v. Thaler*, 133 S.Ct. 1913 (2013), as supportive of his claim, alleging that had he been provided counsel in his Rule 37 proceeding then his claims would have been adequately presented in state court. In other words, the absence of appointed counsel amounted to cause for his procedural default.

Rather than exploring the intricacies of the Arkansas procedural rules and considering the

current state of the law as it relates to the recent cases of *Martinez* and *Trevino, supra,* we find it more appropriate and a better use of judicial resources to proceed to the merits of the claims advanced by Mr. Chunestudy. We note the following language of the Eighth Circuit Court of Appeals:

> In cases such as this, it might well be easier and more efficient to reach the merits than to go through the studied process required by the procedural default doctrine. Recent commentary points up the problems with the cause and prejudice standard:
>> [T]he decision tree for habeas review of defaulted claims is intricate and costly. . . . In essence, *Sykes* and *Strickland* require habeas lawyers and federal judges and magistrates to work through the equivalent of a law school exam every time a defendant tries to escape procedural default.

*McKinnon v. Lockhart*, 921 F.2d 830, 833 n.7 (8th Cir. 1990) (quoting Jeffries & Stuntz, *Ineffective Assistance and Procedural Default in Federal Habeas Corpus*, 57 U.Chi.L.Rev. 679, 690 (1990)). We now turn to the merits of grounds 1, 4, and 5.

**Claim 1: The trial court erred in admitting evidence of prior and subsequent acts:** As previously noted, the respondent argued this claim was rooted only in state law and should be dismissed on that basis. However, we are bound to liberally construe the claim, and we do so, considering the claim to be a challenge to the due process afforded Mr. Chunestudy at trial.

> In order to establish a denial of due process, the petitioner must prove that the asserted error was so gross, *Taylor v. Minnesota*, 466 F.2d 1119, 1121 (8th Cir. 1972), *cert. denied*, 410 U.S. 956 (1973), conspicuously prejudicial, *United States ex rel. Cannon v. Maroney*, 373 F.2d 908, 910 (3rd Cir. 1967), or otherwise of such magnitude that it fatally infected the trial and failed to afford the petitioner the fundamental fairness which is the essence of due process. *Lisenba v. California*, 314 U.S. 219 (1941). In making this determination, the courts must review the totality of the facts in the case pending before them and analyze the fairness of the particular trial under consideration.

*Maggitt v. Wyrick*, 533 F.2d 383 (8th Cir. 1976). See also *Kennedy v. Kemma*, 666 F.3d 472, 481 (8th Cir. 2012). Our inquiry is first, did the trial court err in admitting evidence of other sexual activity with the victim before and after the offense dates of which he was charged (between March 2003, and June 2005). (Tr. 10). If the trial court erred, the second inquiry is whether the error was so "gross", "conspicuously prejudicial", or "of such magnitude that it fatally infected the trial", such

that Mr. Chunestudy did not receive a fundamentally fair trial. The record reflects a pretrial hearing was conducted on the admissibility of these acts. Also, this claim was raised on direct appeal, and we quote from the Supreme Court of Arkansas' summary of the facts and their consideration of this issue:

> . . . Criminal charges were filed against Chunestudy on November 19, 2009, alleging that he raped his minor daughter in Greene County, Arkansas, between the dates of March 1, 2003, and April 27, 2005. A jury trial began on August 10, 2011.
>
> At trial, the State presented evidence, including the testimony of the victim herself, that Chunestudy had an ongoing, long-term sexual relationship, including sexual intercourse, with his minor daughter. The abuse began when they lived in Oklahoma when she was only eleven or twelve and continued after they moved to Arkansas, including when they resided in Greene County. When Chunestudy and the victim lived in Greene County, she was between the ages of fifteen and eighteen. Chunestudy later married her when she reached maturity, and they moved to Craighead County. The victim eventually moved back to Oklahoma to live with her ex-stepmother, where she disclosed the abuse. Her ex-stepmother called the authorities to report the relationship, and an investigation began, which led to Chunestudy's arrest.
>
> The jury found Chunestudy guilty of rape and sentenced him to life imprisonment. It is from that conviction and sentence that he now appeals. . .
>
> Chunestudy argues that the circuit court erred when it allowed the State to introduce evidence of other sexual activity with the victim prior and subsequent to the offense dates of which he was charged. Specifically, he contends that the evidence was inadmissible pursuant to Ark. R. Evid. 404(b) as character evidence that had no relevance except to show his propensity to commit the crime charged and that the prejudicial effect of the evidence outweighed its probative value under Ark. R. Evid. 403. The State avers that the circuit court's rulings should be upheld as such evidence not only corroborated the victim's testimony of what occurred in Greene County during the years relevant to the charge, but also demonstrated Chunestudy's proclivity for sex with her and his opportunity, intent, and plan. We agree with the State and uphold the circuit court's evidentiary rulings.
>
> Chunestudy filed two motions in limine asking the circuit court to prevent the introduction of sexual acts between he and the victim that occurred outside of the dates alleged in the information—March 1, 2003 to April 27, 2005—the time the two lived in Greene County. The State responded with its own motion, asking the court to permit the admission of the same. The circuit court found the prior sexual acts were admissible but reserved ruling on any acts subsequent to those dates. During the course of trial, the court also allowed the introduction of sexual acts that occurred subsequent to the dates alleged in the information. Specifically, Chunestudy contests that the circuit court erred by admitting the following evidence: Chunestudy's

marriage to the victim in Craighead County; Chunestudy's arrest for incest in Craighead County; Chunestudy's admission that he had sex with his daughter, the victim, after she turned eighteen; the victim's testimony about Chunestudy allowing her to watch pornography and engaging in sexual intercourse with her when the two lived in Oklahoma; the victim's testimony regarding Chunestudy's sexual intercourse with her that occurred in Mountain View, Arkansas, prior to their move to Greene County, Arkansas; testimony of the victim about events after she reached maturity, such as moving to Jonesboro, the marriage to Chunestudy, a pregnancy, and their divorce; and, the victim's testimony that covered sexual acts that occurred over a ten-year time period in multiple jurisdictions.

Rule 404(b) provides that

[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Ark. R. Evid. 404(b) (2011). Evidence is not admissible under Rule 404(b) simply to show a prior bad act. See Vance v. State, 2011 Ark. 243, 383 S.W.3d 325. In reviewing the admission of evidence under Rule 404(b), this court has observed that circuit courts have broad discretion in deciding evidentiary issues, and their decisions are not reversed absent an abuse of discretion. See Rounsaville v. State, 2009 Ark. 479, 346 S.W.3d 289. We review a circuit court's decision to admit evidence over a Rule 403 objection under an abuse-of-discretion standard as well. See Flanery v. State, 362 Ark. 311, 208 S.W.3d 187 (2005).

When the charge concerns the sexual abuse of a child, evidence of other crimes, wrongs, or acts, such as sexual abuse of that child or other children, is admissible to show motive, intent, or plan pursuant to Ark. R. Evid. 404(b). See Hathcock v. State, 357 Ark. 563, 182 S.W.3d 152 (2004). This is known as the "pedophile exception." See id. We have approved allowing evidence of the defendant's similar acts with the same or other children when it is helpful in showing a proclivity for a specific act with a person or class of persons with whom the defendant has an intimate relationship. See Kelley v. State, 2009 Ark. 389, 327 S.W.3d 373. The rationale for this exception is that such evidence helps to prove the depraved sexual instinct of the accused. See id. For the pedophile exception to apply, we require that there be a sufficient degree of similarity between the evidence to be introduced and the sexual conduct of the defendant. See id. We also require that there be an "intimate relationship" between the perpetrator and the victim. See id.

Here, the victim's testimony fell squarely under the pedophile exception to Rule 404(b). The relationship between the victim and her father was clearly an intimate one. See White v. State, 367 Ark. 595, 242 S.W.3d 240 (2006). Furthermore, the similar acts she described were exactly of the same nature as the acts that occurred in the time frame listed in the information—it was an ongoing sexual relationship. We hold that the circuit court did not abuse its discretion in admitting this evidence.

>   We also do not find Chunestudy's Rule 403 argument convincing. Rule 403 provides that, "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by consideration of undue delay, waste of time, or needless presentation of cumulative evidence." Ark. R. Evid. 403 (2011). This court has noted that evidence offered by the State is often likely to be prejudicial to the accused, but the evidence should not be excluded unless the accused can show that it lacks probative value in view of the risk of unfair prejudice. See Eubanks v. State, 2009 Ark. 170, 303 S.W.3d 450 (2009).
>
>   In cases involving evidence subject to the pedophile exception, we have looked to the similarities between the alleged prior conduct and the charged conduct to determine whether they make the evidence probative on the issue of the accused's motive, intent, preparation, plan, and scheme. See id. When the similarities are significant, we have permitted the evidence, despite the prejudice to the accused. See id. We have also noted that the evidence is permissible when the similarities make it probative on the issue of the accused's deviate sexual impulses. See id.
>
>   As for the other evidence specifically listed by Chunestudy as having been admitted erroneously that was not sexual conduct, including evidence regarding the marriage, the pregnancy, and the divorce, no contemporaneous objections were made. While Chunestudy did make a continuing objection on the record pursuant to Rule 403 to "any evidence regarding anything that happened after Greene County," he failed to expand on that broad objection at the time evidence applicable to that objection was admitted and illustrate why that particular piece of evidence was more prejudicial than probative. Therefore, the only Rule 403 argument that Chunestudy made below, and the only one he now presents on appeal, is that the evidence should have been "limited to what occurred in Greene County" and that "the majority of the evidence presented at trial concerned acts that occurred in other jurisdictions." We fail to see how that is a meritorious argument illustrating how the specific evidence objected to was more prejudicial than probative. Accordingly, we affirm on this point.

*Chunestudy v. State*, 2012 Ark. 222, 1-7.

Mr. Chunestudy fails to demonstrate any error was committed by the trial court in admitting the evidence of prior and subsequent acts. It follows that no error of constitutional magnitude occurred. When the state court has ruled on the merits of a petitioner's claims, a writ of habeas corpus may not be granted unless the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court" or the state court's decision "was based on an unreasonable determination of the facts in light of the

evidence presented in the State court." 28 U.S.C. § 2254(d)(1), (2). The United States Supreme Court offers guidance in interpreting the statute:

> A state court decision will be "contrary to" our clearly established precedent if the state court either "applies a rule that contradicts the governing law set forth in our cases," or "confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent." A state court decision will be an "unreasonable application of" our clearly established precedent if it "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case."
> . . . Distinguishing between an unreasonable and an incorrect application of federal law, we clarified that even if the federal habeas court concludes that the state court decision applied clearly established federal law incorrectly, relief is appropriate only if that application is also objectively unreasonable.

*Penry v. Johnson*, 532 U.S. 782, 792-93 (citations omitted). Here, Mr. Chunestudy fails to establish the decision of the Arkansas trial and appellate court was contrary to federal law or an unreasonable determination of the facts. He cites no federal case to support his alleged due process violation. In addition, he fails to show the state courts unreasonably applied the law to the facts of his case. There is no merit to the first claim for relief.

**Claim 4: The trial court erred in allowing comments on Mr. Chunestudy's right to remain silent:** Mr. Chunestudy faults the trial court for allowing comments which Mr. Chunestudy maintains were a comment on his Fifth Amendment right to remain silent. Mr. Chunestudy also faults his attorney for failing to object at trial. When the trial court's alleged error was raised on direct appeal, the Supreme Court of Arkansas did not reach the merits of the claim because there was no objection at trial. The appellate court did concisely summarize the allegations:

> Chunestudy next argues that several times during the trial, the State, or one of its witnesses, made a comment that violated Chunestudy's constitutional right to remain silent. Chunestudy concedes that he did not make a timely objection and argument regarding the exercise of his right to remain silent; however, he argues that it is properly presented on appeal because one of the four exceptions outlined in *Wicks v. State,* 270 Ark. 781, 606 S.W.2d 366 (1980), applies. The State avers that the *Wicks* exceptions do not apply, that the issue was not properly preserved, and that, regardless, the argument is without merit. We agree with the State that the *Wicks* exceptions do not apply and that the argument is not properly preserved.
>
> During trial, Detective Todd Nelson testified that before he questioned Chunestudy, he advised him of his *Miranda* rights. Nelson testified that Chunestudy then stated he thought he might need to talk to an attorney, so Nelson concluded the

>interview and placed Chunestudy back in a holding cell. However, Nelson was later notified that Chunestudy requested to speak to him and asked if he could make a statement, but stop answering questions if he wanted to stop answering at some point. Nelson informed Chunestudy that he could and then resumed his interview, which was entered into evidence and played for the jury. Chunestudy takes issue with a line of questioning in which the prosecutor asked Nelson about when Chunestudy was asked if he had sex with his daughter when she was a minor and Nelson testified that Chunestudy did not want to talk about it and had responded with, "I can't say that" or "I can't say that I didn't." Additionally, Chunestudy contends that Officer Shannon Anthony should not have been allowed to testify that after he read Chunestudy his *Miranda* warning, Chunestudy chose not to give a statement.

*Chunestudy v. State*, 2012 Ark. 222, 7-8.

Chunestudy cites *Doyle v. Ohio*, 426 U.S. 610 (1976), to support this claim. In *Doyle*, the defendants invoked their Fifth Amendment right to remain silent prior to trial, then took the stand and offered exculpatory explanations of the events which lead to their arrest. Over the objection of their attorney, the defendants were cross-examined as to why they had not told their trial version of the events to the arresting officer. The use of a defendant's silence to impeach his later testimony was held to violate due process.

The reliance by Mr. Chunestudy on *Doyle v. Ohio, supra*, is misplaced. Mr. Chunestudy, after being *Mirandized* and initially invoking his right to remain silent, later initiated an interview with Jonesboro Police Officer Todd Nelson. After requesting this interview, Mr. Chunestudy signed a waiver of his *Miranda* rights. (Tr. 185). The interview conducted by Officer Nelson was recorded and admitted into evidence at the trial. (Tr. 289). The questions at trial about which Mr. Chunestudy complains do not fall under the umbrella of *Doyle*. While it is correct that Officer Nelson and Officer Anthony both testified that Mr. Chunestudy initially invoked his *Miranda* rights, these rights were clearly waived later, resulting in the subsequent interview with Officer Nelson. (Tr. 286, 319). In addition, the testimony about which Mr. Chunestudy complains is more accurately described as comments on Mr. Chunestudy's interview and the explanations contained therein rather than comments on his silence. For example, Officer Nelson was asked about Mr.

Chunestudy's answer to the question of whether he had sex with his daughter when she was a minor. Officer Nelson answered:

> His initial answer early on in the interview I think he said no, or I don't want to talk about it. I couldn't really remember exactly what he said. We left it alone. When we came back to it in the interview, I said – I asked him are you saying you haven't had sex with her – or you never had sex with her before she turned 18, and he said I can't say that, and then said he didn't want to talk about it.

(Tr. 290-291). Similarly, the prosecutor, in his closing argument, commented on what Mr. Chunestudy said[2], after waiving his *Miranda rights,* not upon his silence. To establish a trial court error of constitutional dimension, Mr. Chunestudy must show error that was conspicuously prejudicial. See *Maggitt v. Wyrick*, 533 F.2d 383 (8th Cir. l976). Mr. Chunestudy fails to make such a showing.

**Claim 5: Nine allegations of ineffective assistance of counsel:** The respondent contends that only five of the nine assertions of ineffective assistance of counsel are properly before the Court due to Mr. Chunestudy's procedural default of the remaining four claims. However, we have concluded it more efficient to consider all nine allegations. We find three claims were clearly presented in both the trial and appellate state court venue (claims 5(b), (c), and (h)), and these claims are to be examined in light of 28 U.S.C. § 2254(d)(1), (2), dealing with those instances where the state court has ruled on the merits of a petitioner's claims.

***Three claims raised in state court – 5(b), (c), and (h):*** The Arkansas Supreme Court, in the Rule 37 appeal, addressed these claims in the following fashion:

> The benchmark for judging a claim of ineffective assistance of counsel must be "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland,* 466 U.S. at 686, 104 S.Ct. 2052. Pursuant to *Strickland,* we assess the effectiveness of counsel under a two-prong standard. First, a petitioner raising a claim of ineffective assistance must show that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the petitioner by the Sixth Amendment to the United States Constitution. *Caery,* 2014 Ark. 247, 2014 WL 2158140; *Williams v. State,* 369 Ark. 104, 251 S.W.3d 290 (2007). There is a strong

---

[2]Among other things, the prosecutor said, "I guarantee you wild horses could've given me a lot better explanation if I'm being accused of something that I did not commit." (Tr. 574-575).

presumption that trial counsel's conduct falls within the wide range of professional assistance, and an appellant has the burden of overcoming this presumption by identifying specific acts or omissions of trial counsel, which, when viewed from counsel's perspective at the time of the trial, could not have been the result of reasonable professional judgment. *Henington v. State,* 2012 Ark. 181, 403 S.W.3d 55; *McCraney v. State,* 2010 Ark. 96, 360 S.W.3d 144 (per curiam). Second, the petitioner must show that counsel's deficient performance so prejudiced petitioner's defense that he was deprived of a fair trial. *Holloway v. State,* 2013 Ark. 140, 426 S.W.3d 462. A petitioner making an ineffective-assistance-of-counsel claim must show that his counsel's performance fell below an objective standard of reasonableness. *Abernathy v. State,* 2012 Ark. 59, 386 S.W.3d 477 (per curiam). The petitioner must show that there is a reasonable probability that, but for counsel's errors, the fact-finder would have had a reasonable doubt respecting guilt, i.e., the decision reached would have been different absent the errors. *Breeden v. State,* 2014 Ark. 159, 432 S.W.3d 618 (per curiam). A reasonable probability is a probability sufficient to undermine confidence in the outcome of the trial. *Id.* The language, "the outcome of the trial," refers not only to the finding of guilt or innocence, but also to possible prejudice in sentencing. *Id.* Unless a petitioner makes both showings, it cannot be said that the conviction resulted from a breakdown in the adversarial process that renders the result unreliable. *Id.* "[T]here is no reason for a court deciding an ineffective assistance claim ... to address both components of the inquiry if the defendant makes an insufficient showing on one." *Strickland,* 466 U.S. at 697, 104 S.Ct. 2052.

To understand appellant's allegations in the Rule 37.1 petition and his arguments on appeal, a summary of the evidence adduced at trial is necessary. Criminal charges were filed against appellant in 2009, alleging that he had raped his minor daughter in Greene County, Arkansas, between March 1, 2003, and April 27, 2005. At trial, the State presented evidence, including the testimony of the victim, that she and appellant had engaged in an ongoing, long-term sexual relationship that included sexual intercourse. The relationship began when they lived in Oklahoma when the victim was eleven or twelve years old and continued after they had moved to Arkansas, including a stay in Greene County, when she was between the ages of fifteen and eighteen. Appellant later married his daughter when she reached eighteen, and they moved to Craighead County. The victim eventually moved back to Oklahoma where she disclosed the abuse to her former stepmother, leading to appellant's arrest. It was appellant's defense at trial that no rape occurred in Greene County.

Appellant first argues on appeal that counsel was ineffective for failing to move for a motion for directed verdict at the close of all the evidence, which resulted in our declining to consider the issue of the sufficiency of the evidence on appeal. While this issue was not raised in the Rule 37.1 petition, it was raised at the hearing, and the trial court ruled on the issue. As the question was raised at the hearing and ruled on by the court, it is clear that the court constructively allowed appellant to amend his petition to bring up the issue. Accordingly, the issue can be raised in this appeal. *See Croft v. State,* 2010 Ark. 83, 2010 WL 569744 (per curiam).

Considering the totality of the evidence adduced at trial, we cannot say that the trial court erred in holding that counsel was not ineffective for not renewing the motion for directed verdict at the close of all the evidence. When it is asserted that

counsel was ineffective for the failure to make a motion or argument, the petitioner must show that the motion or argument would have been meritorious because the failure to make an argument that is meritless is not ineffective assistance of counsel. *Conley,* 2014 Ark. 172, 433 S.W.3d 234 (citing *Mitchell v. State,* 2012 Ark. 242, 2012 WL 1950257). For that reason, appellant must demonstrate that this court on appeal would have found that the evidence adduced at trial was insufficient to support a conviction and would have overturned his conviction for that reason. *Conley,* 2014 Ark. 172, 433 S.W.3d 234 (citing *Strain v. State,* 2012 Ark. 42, 394 S.W.3d 294). Because the trial court determined that no prejudice resulted from the failure to renew the directed-verdict motion, the appeal of that decision requires this court to review whether there was sufficient evidence to support the verdict.

A person commits rape if he or she engages in sexual intercourse or deviate sexual activity with another person who is less than eighteen years of age and the actor is the victim's guardian, *see* Ark.Code Ann. § 5–14–103(a)(4)(A)(I) (Repl.2006), or step-grandparent, *see id.* § 5–14–103(a)(4)(A)(ii). A "guardian" is defined as "a parent, stepparent, legal guardian, legal custodian, foster parent, or any person who by virtue of a living arrangement is placed in an apparent position of power or authority over a minor." *Id.* § 5–14–101(3) (Repl.2006). Here, there was evidence elicited at trial that appellant was the victim's biological daughter, that he engaged in sexual intercourse with the victim, and that the victim was less than eighteen years of age when the sexual intercourse occurred. The credibility of the witnesses who provided the testimony that proved the elements of the offense of rape was for the jury to assess. *Green v. State,* 2013 Ark. 497, 430 S.W.3d 729. When the totality of the evidence against appellant is taken into account, it establishes that the trial court was not clearly erroneous in its determination that a motion for directed verdict would not have been successful.

Appellant next contends that counsel failed to properly prepare for trial in that he did not call a witness to rebut the testimony of Lea Ann Vanaman, a witness for the State. Vanaman, a supervisor with the Crimes Against Children Division of the Arkansas State Police, testified about her part in the investigation of the allegations against appellant and about behavior typical in victims of child abuse. On cross-examination, counsel elicited from Vanaman that she had never interviewed appellant's daughter and that she obtained her information concerning his daughter's claims of abuse from reports that were called in to the "hotline" about which no action was taken because the victim was no longer a minor and it was not known that appellant still had access to children.

In his Rule 37.1 petition, appellant alleged that counsel erred in not calling an expert witness to rebut Vanaman's testimony, but he did not state on what basis Vanaman's testimony could have been rebutted or explain what information a rebuttal witness would have imparted to the jury that would have made a difference to the outcome of the trial.[footnote omitted] At the hearing on the petition, counsel noted that he objected to Vanaman's being called as a witness, and the record on direct appeal reflects that counsel argued that Vanaman had no direct knowledge of the case. Counsel also testified that he brought out on cross-examination Vanaman's inability to offer any direct evidence concerning the charges against appellant. Considering counsel's objection to Vanaman's testimony, and inasmuch as appellant did not support his allegation that counsel should have called a specific rebuttal witness with any facts in either the petition or in the evidentiary hearing to

13

> demonstrate how he was prejudiced, he failed to make a showing that counsel was ineffective. *See Green v. State,* 2014 Ark. 284, 2014 WL 2814866 (per curiam).
>
> As his third argument on appeal, appellant contends that counsel failed to impeach the victim concerning her inconsistent statements and that he failed to recall her as a witness. In his brief, appellant does not state which of the victim's statements he contends were inconsistent or otherwise advance any argument concerning how he was prejudiced. In the petition filed below, he contended that the victim should have been recalled to "explore and exploit" her admissions concerning an unlawful breaking or entering and her allegations of pregnancies and miscarriages. He further asserted that an expert witness should have been called to impeach the victim's statements concerning pregnancies and miscarriages. At the evidentiary hearing, appellant questioned counsel about why medical doctors were not called to testify about the victim's allegations and why the victim was not cross-examined concerning a break-in at appellant's house. Because appellant did not state what specific evidence could have been elicited from a doctor concerning the victim's allegations of pregnancies and miscarriages or from the victim concerning the break-in, he failed to establish that counsel's decisions prejudiced the defense. Petitioner's claim about calling a doctor fails because he has not meet his burden of demonstrating a specific reason that a medical witness should have been called by explaining what evidence could have been elicited from that witness.
>
> Likewise, with respect to the break-in, he did not show that questioning the victim would have elicited any specific information that would have been helpful to the defense. The general suggestion that calling a witness or asking a witness a particular question would have been beneficial to the defense is not sufficient to satisfy the second prong under *Strickland* because conclusory claims do not demonstrate that there was prejudice to the defense. It is not enough to allege prejudice, prejudice must be demonstrated with facts. *Stiggers v. State,* 2014 Ark. 184, 433 S.W.3d 252.

*Chunestudy v. State*, 2014 Ark. 345, 2-8.

Since the state courts have ruled on the merits of these claims, Mr. Chunestudy bears the burden of showing the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court" or the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court." 28 U.S.C. § 2254(d)(1), (2). Regarding federal law, the Supreme Court of Arkansas appropriately cites *Strickland v. Washington*, 466 U.S. 688 (l983), the leading case on the elements of ineffective assistance of counsel. Mr. Chunestudy makes no plausible argument that the state courts unreasonably applied the *Strickland* formula. Similarly, there is no showing that the state courts denied him Rule 37 relief based upon an unreasonable determination

of the facts. To the contrary, the state court properly found that the requirements of *Strickland* were not satisfied. Even if some attorney error were assumed, the state courts' finding of no prejudice is strongly supported by the record. Grounds 5(b), (c), and (h) are meritless.

*Six claims not raised in state court – 5(a), (d), (e), (f), (g), and (i):* There are six claims of ineffective assistance of counsel which were not fully examined in state court. These claims are: 5(a) trial counsel failed to investigate the victim's past, which would have demonstrated many years of therapy and disciplinary problems in elementary school which prompted her to be homeschooled; 5(d) trial counsel made numerous errors which prevented witness Callie Chunestudy from testifying concerning the victim's propensity for untruthfulness, and trial counsel erred in failing to show Mr. Chunestudy's statement was inadmissible because Officer Nelson re-initiated contact with Mr. Chunestudy; 5(e) trial counsel failed to contact potential witnesses Richard and Diane George, who were the victim's godparents; 5(f) trial counsel failed to contact Todd Nelson of the Jonesboro Police Department to testify about the theft of Mr. Chunestudy's vehicle; 5(g) trial counsel failed to object to comments on his right to remain silent; and 5(i) trial counsel failed to ask for a limiting instruction on the evidence of prior acts.

In order to prove ineffective assistance of counsel, Mr. Chunestudy must prove that (l) his attorney's actions were unreasonable when viewed in the totality of the circumstances; and (2) he was prejudiced because there is a reasonable probability that, but for counsel's unprofessional errors, the result of the trial would have been different. *Strickland v. Washington*, 466 U.S. 688 (l983); *Ryder v. Morris*, 752 F.2d 327, 33l (8th Cir. l985). The petitioner bears a heavy burden in overcoming "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689; *Kellogg v. Scurr*, 74l F.2d l099, ll0l (8th Cir. l984); *Bell v. Lockhart*, 74l F.2d ll05, ll06 (8th Cir. l984). This presumption is created to "eliminate the distorting effects of hindsight," and recognizes that "it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." *Strickland*, 466 U.S. at 689; *Ryder*, 752 F.2d at 33l.

15

With respect to grounds 5(a), (d), (e), (f), (g), and (i), Mr. Chunestudy fails to satisfy either of the two prongs of the *Strickland* case. At trial, Mr. Chunestudy's attorney offered as a defense that no sexual activity had occurred during the relevant time period when Mr. Chunestudy and his daughter were living in Greene County. This defense strategy proved unsuccessful. The blame for the failure of the strategy does not, however, lie with the trial attorney. The facts were overwhelmingly stacked against any defense. Primary among the facts was the testimony of Mr. Chunestudy's biological daughter, the victim, who stated he began a sexual relationship with her in Oklahoma when she was twelve, and the sexual relationship continued as they moved to Mountain View, then to Greene County in 2003. (Tr. 343-51). She testified that Mr. Chunestudy had sex with her two to four times a week during the roughly two and half years they lived in Greene County. (353-354).

These six claims of ineffective assistance of counsel (5(a), (d), (e), (f), (g), and (i)) are, at best, hindsight attempts to focus on peripheral issues. For example, even if Mr. Chunestudy's attorney had successfully impeached the victim regarding troubles in her past and regarding her removal of property from Mr. Chunestudy's residence and mini-storage unit (claim 5(a)), this does not refute the evidence that sexual activity occurred as alleged. In addition, the statements of witness Callie Chunestudy, the victim's older step-sister, regarding the victim's propensity for lying (claim 5(d)) were based on the witness' contact with the victim many years before, and not even close to the relevant time period for the rape. And in fact, defense counsel was able to question this witness about several lies by the victim made years before as a child. (Tr. 473-481). Mr. Chunestudy has not offered evidence that his attorney acted unreasonably as to this claim.

The waiver of *Miranda* rights and admission of Mr. Chunestudy's statement (claim 5(g)) were litigated in a pre-trial hearing, and additional objections by trial counsel would not have changed the trial court's ruling in this regard[3]. Similarly, the failure to call witnesses Richard and

---

[3]The trial judge commented, "That is the most low-key interview that I think anyone would have a right to expect. There's no pressure being applied by Detective Nelson. Mr. Chunestudy

Diane George, the victim's godparents (claim 5(e)), has not been shown by Mr. Chunestudy to be unreasonable. There is no suggestion by Mr. Chunestudy that these witnesses would have disputed the rape of his daughter.

Likewise, Mr. Chunestudy fails to prove that his attorney's decision to not call Detective Nelson to corroborate Mr. Chunestudy's theory that the victim's theft of his vehicle and property coincided with his arrest (claim 5(f)) was unreasonable. As Mr. Chunestudy alleges, Nelson's testimony would have merely corroborated the testimony already offered by Mr. Chunestudy and the victim. (Tr. 416-417, 523). Nelson had only second-hand information on this topic, and such testimony would have added little to Mr. Chunestudy's defense. Testimony on this issue was peripheral to the crime committed, and Mr. Chunestudy's attorney was correct in sensing jurors might see such testimony as a "smoke screen". *Docket entry no. 1, page 14*. As to claim 5(g), regarding defense counsel's failure to object to "comments on his right to remain silent," we have previously addressed whether the trial court erred in this regard, finding no error. For the reasons set forth in our discussion of claim 4, we find that any objection by trial counsel would not have succeeded.

Finally, Mr. Chunestudy faults his counsel for failing to request a limiting jury instruction on prior bad acts evidence (claim 5(i)). He cites no authority holding that failure to so request constitutes ineffective assistance of counsel or suggesting federal law requires such an instruction. There was no ineffective assistance in this regard.

Even if we were to assume the first prong of the *Strickland* standard was satisfied by one or more of the assertions of attorney acts or omissions in ground 5, Mr. Chunestudy still remains unentitled to relief because he falls far short of satisfying the second *Strickland* prong. Mr. Chunestudy must show that there is a reasonable probability that the outcome of the trial would have

---

was calm. He obviously understood what was going on, what his rights were. He exercised those rights and then he was very careful and specific in how he would waive any of those, made sure he knew the limits of what he was doing. The statement is voluntary." (Tr. 197-198).

been different if only his attorney had done this or that. The record forcefully refutes such an argument. Mr. Chunestudy tried to counter the ample evidence against him, testifying in his own defense. The jury nonetheless returned a guilty verdict 37 minutes after retiring. (Tr. 615).

In summary, none of the allegations of ineffective assistance of counsel are meritorious. Further, grounds 1-4 are without merit for the reasons set forth herein. As a result, we recommend the petition for writ of habeas corpus be dismissed, and the relief requested be denied.

Pursuant to 28 U.S.C. § 2253 and Rule 11 of the Rules Governing Section 2554 Cases in the United States District Court, the Court must determine whether to issue a certificate of appealability in the final order. In § 2254 cases, a certificate of appealability may issue only if the applicant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(1)-(2). The Court finds no issue on which petitioner has made a substantial showing of a denial of a constitutional right. Thus, we recommend the certificate of appealability be denied.

IT IS SO ORDERED this 18th day of September, 2015.

_____
UNITED STATES MAGISTRATE JUDGE